# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH WATKINS,

    Plaintiff,

v.

GWALTNEY OF SMITHFIELD, LTD.
t/a GWALTNEY FOODS, et al.,

    Defendants.

CIVIL ACTION NO. 3:16-CV-2049

(JUDGE MARIANI)

## MEMORANDUM OPINION
## I. INTRODUCTION and PROCEDURAL HISTORY

Two motions are pending before the Court in the above-captioned matter: Defendants' Motion for Summary Judgment Pursuant to Rule 56 (Doc. 30) and Plaintiff's Motion to Preclude Defendants' Exhibit Number #3 (Doc. 31-3) & Exhibit #4 (Doc. 31-4) to Defendants' Motion for Summary Judgment (Doc. 33).

Plaintiff filed his Complaint in the Court of Common Pleas of Lackawanna County (Doc. 1-1) and Defendants removed the case to this Court on the basis of diversity of citizenship (Doc. 1 ¶ 8). Plaintiff alleges that he was injured when he bit into a hot dog which was manufactured by Defendants Gwaltney/Smithfield and purchased at Walmart. (Doc. 1-1 at ¶¶ 9-11.) The Complaint specifically states that "[w]hen Plaintiff bit into a hot dog, he immediately broke a few teeth and lacerated his tongue due to a sharp mental blade contained inside the hot dog." (Doc. 1-1 ¶ 11.) Plaintiff's Complaint contains four

counts: Count I for Negligence against all Defendants; Count II for Negligence, *Res Ipsa Loquitor*, against all Defendants; Count III for Strict Liability; and Count IV for Breach of Warranty. (Doc. 1-1 at 6-13.)

Defendants' Motion for Summary Judgment Pursuant to Rule 56 (Doc. 30) was filed on August 13, 2019. Plaintiff's Motion to Preclude Defendants' Exhibit Number #3 (Doc. 31-3) & Exhibit #4 (Doc. 31-4) to Defendants' Motion for Summary Judgment (Doc. 33) was filed on August 29, 2019.[1] The exhibits which Plaintiff seeks to preclude were filed in support of Defendants' Motion for Summary Judgment. They are the Affidavit of Crystal Robinson, Corporate Food Safety Manager and Division Manager of the Smithfield Packaged Meats Corp. (Doc. 31-3) and the Affidavit of Joseph Volansky, the Overnight Assistant Manager of the Taylor, Walmart, Store Number 4276 (Doc. 31-4). For the reasons discussed below, the Court concludes that summary judgment is not warranted with the Affidavits considered in the analysis. Therefore, the Court will deny Plaintiff's Motion to Preclude Defendants' Exhibit Number #3 (Doc. 31-3) & Exhibit #4 (Doc. 31-4) to Defendants' Motion for Summary Judgment (Doc. 33) and will deny Defendants' Motion for Summary Judgment Pursuant to Rule 56 (Doc. 30).

---

[1] Defendants' filed their first motion for summary judgment (Doc. 16) on April 23, 2018. The Court dismissed the motion without prejudice on procedural grounds on August 2, 2019. (Doc. 28.) Following the filing of Defendants' April 23, 2018, summary judgment motion, Plaintiff filed Plaintiff's Motion to Preclude Defendants' Exhibit Number #3 (Doc. 18-5) & Exhibit #4 (Doc. 18-6) to Defendants' Motion for Summary Judgment (Doc. 19). The Court deemed Plaintiff's motion moot by Order of August 2, 2019, based on the dismissal of Defendants' summary judgment motion. (Doc. 29.)

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

On April 14, 2015, Plaintiff purchased a three-pound package of Gwaltney "Great Hot Dogs" from Walmart. (Defendants' Statement of Material Facts, Doc. 32 ¶ 1; Plaintiff's Answer to Defendants' Statement of Material Facts, Doc. 35 ¶ 1.)[2] On or about April 18, 2015, Plaintiff prepared eight hot dogs for himself, two minor children, and his significant other. (Doc. 32 ¶ 2; Doc. 35 ¶ 2.) Plaintiff contends that, upon biting into the hot dog that he had prepared for himself, he bit into a metal blade that caused "serious injuries." (Doc. 32 ¶ 3; Doc. 35 ¶ 3.) Plaintiff did not take any depositions of Defendants and has not engaged an expert witness. (Doc. 32 ¶ 4; Doc. 35 ¶ 4.)

At his deposition, Plaintiff testified about the incident as follows:

Q. When you picked up the hot dogs, did you look at the packaging?
A. I did look at the packaging.

Q. Did the packaging look in tact [sic]?
A. Yes.

Q. And when I say intact [sic], there were no tears or rips or punctures of the plastic wrapping of the hot dogs?
A. Well, when I picked up the pack – when I picked up the packet of [sic] the shelf, you know, I just turned it around, put it into the cart.

Q. But you didn't see any tears, rips, punctures?
A. No.

---

[2] Defendants provide citations to the record in support of their factual averments. (*See* Doc. 32.) The Court has verified Defendants' citations but, with limited exceptions, does not include them in the recitation set out in the text.

((Doc. 32 ¶ 5; Doc. 35 ¶ 5 (quoting Watkins Dep. 26:2-13 (Doc. 35 -1 at 8)).) Once the hot dog package was opened, Plaintiff did not have to dump any water out of the thawing bath. (Doc. 32 ¶ 8; Doc. 35 ¶ 8.) He verified that he looked at the hot dogs as he was putting them in the buns and did not see anything unusual about them. (Doc. 32 ¶ 9; Doc. 35 ¶ 9.) When asked whether he saw anything protruding or anything that would indicate there was something imbedded in the hot dog, he responded "I didn't look at the hot dog, I just put them on the buns. . . . I just put them on the bun and ate the hot dog." (*Id.*) Plaintiff denied the use of any knives in the cooking of the hot dogs. (Doc. 32 ¶ 11; Doc. 35 ¶ 11.)

Regarding his injury, Plaintiff testified that he was injured with his first bite of the hot dog and he broke his dentures and cut his tongue. (Doc. 32 ¶ 10; Doc. 35 ¶ 10.) Plaintiff went to the emergency room to have his tongue examined and he testified about the length of time it took to heal.[3] (Doc. 32 ¶ 12; Doc. 35 ¶ 12.) Plaintiff had a blood panel test to determine exposure to blood borne pathogens which came back negative. (Doc. 32 ¶ 13; Doc. 35 ¶ 13.)

The blade fragment at issue measures .85 inches (21.50 MM) in length and .4 inches (10.16 mm) at the widest spot. (Doc. 32 ¶ 14; Doc. 35 ¶ 14.)

---

[3] Defendant quotes Plaintiff as testifying that the cut healed in "three days." (Doc. 32 ¶ 12; Doc. 35 ¶ 12 (quoting Watkins Dep, 46:2-3).) The quoted testimony indicates that Plaintiff was asked "How long did it take your tongue to heal?" (Watkins Dep. 46:2) and he responded "A couple of days" (Watkins Dep. 46:3). (*See* Doc. 35-1 at 13.)

4

Crystal Robinson is the Corporate Food Safety Manager and Division Manager of Smithfield Packaged Meats Corporation in Kinston, North Carolina. (Doc. 32 ¶ 16; Doc. 35 ¶ 16.) She stated in a sworn affidavit that the production of the Gwaltney "Great Hot Dogs" includes the following steps:

> First, Smithfield receives mechanically separated chicken at the Kinston processing plant, which is then placed into a blender utilizing a 1/8 inch grinding plate in order to achieve a 1/8 inch grind of the meat while blending it with a collagen gel. The hot dogs are then formed and go through a pre and post drying process. The hot dogs are then robot packaged and x-rayed to detect any foreign objects, including metals, as little as .8mm or larger in size. While the hot dogs are in their sealed package they are water cooked. Robots then place the cooked hot dogs in boxes and mechanically palletize them. Once boxed, the hot dogs are ready for shipment.
>
> Due to the above stated manufacturing process, if a foreign object were in the processed hot dogs, in order to miss detection, it would have to necessarily both be 1.) less than .8 mm in size; and 2.) not observed via post – batch inspection of the 1/8 inch grinding plate.

(Doc. 32 ¶ 18; Doc. 35 ¶ 18 (quoting Robinson Aff: ¶¶ 4-7 (Doc. 31-3 at 2-3)).) The metal fragment at issue is larger in length and width than .8mm. (Doc. 32 ¶ 15; Doc. 35 ¶ 15.)

Joseph Volansky, is Walmart's Overnight Assistant Manager and attested to being familiar with Walmart's inventory process. (Doc. 32 ¶ 19; Doc. 35 ¶ 19.) He provided a sworn affidavit in which he attested that,

> upon receipt of the hot dogs from the manufacturer, the Gwaltney "Great Hot Dogs" are unpackaged with a box cutter and the product would be placed in coolers on the store floor. Mr. Volansky . . . attest[ed] to having provided a number of box cutter blades to the Defendants' counsel for purposes of metallurgical testing.

(Doc. 32 ¶¶ 20-21; Doc. 35 ¶ 20-21.)

5

The CV of Alan Stone, a Principle with Wiss, Janney, Elstner Associates, Inc., indicates that he is a metallurgical engineer. (Doc. 32 ¶ 22; Doc. 35 ¶ 22.) In his Laboratory Report, Mr. Stone states that he performed several examinations of the blade involved in Plaintiff's incident and compared it to a sample of blades provided by Walmart of the box-cutter blades used in the unpacking of the hot dogs. (Doc. 32 ¶ 23; Doc. 35 ¶ 23.) Mr. Stone observed that the blade involved in Plaintiff's incident measured approximately .85 inches, or 21.59 millimeters, and the sample box-cutter blades measured approximately 1.5 inches long. (Doc. 32 ¶¶ 24-25; Doc. 35 ¶¶ 24-25.) Mr. Stone stated that he was able to determine that the box-cutter blades were "devoid of major alloying elements," which placed the blades "in a class of either a carbon or low alloy steel." (Doc. 32 ¶ 26; Doc. 35 ¶ 26.) He also stated that the blade involved in the subject incident was in the "class of a 400 series type stainless steel alloy." (Doc. 32 ¶ 27; Doc. 35 ¶ 27.) Mr. Stone further opined on on the wear patterns of the subject blade. (Doc. 32 ¶ 29; Doc. 35 ¶ 29.)

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127

S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. ANALYSIS

A.  <u>Summary Judgment Motion</u>

Defendants assert that they are entitled to summary judgment on several bases. First, they maintain that Plaintiff has failed to meet his burden of demonstrating a genuine issue of material fact that Defendants' product was defective at the time it left their care, custody, and control because Plaintiff has taken no discovery and offers only his own deposition testimony; he has not rebutted evidence that the metal in question could not

8

have come from the hot dog manufacturing facility; he has failed to rebut evidence that the metal in question did not come from the Walmart retail facility; and he has failed to rebut evidence that the metal in question is that of a standard kitchen knife. (Doc. 31 at 16-22.) Second, Defendants contend that Plaintiff has failed to meet his burden of showing a genuine issue of material fact regarding liability under the doctrine of *res ipsa loquitor*. (*Id.* at 22-29.) The Court will first consider liability under the doctrine of *res ipsa loquitor*.

1.  *Res Ipsa Loquitor*

Defendants argue that Plaintiff cannot satisfy a necessary element of showing liability pursuant to the doctrine of *res ipsa loquitor* and, therefore, *res ipsa loquitor* is not applicable here and the Court should enter judgment in their favor. (Doc. 31 at 22-29.) Plaintiff responds that the facts of this case show that a jury may be permitted to infer that his injury was due to Defendants' negligence under the *res ipsa loquitor* doctrine and the Restatement (Second) of Torts § 328D (1965), which Pennsylvania has adopted as the law of the Commonwealth. (Doc. 36 at 7.) The Court concludes that Defendants have not shown they are entitled to judgment as a matter of law on Plaintiff's claims of negligence when the claims are considered under the doctrine of *res ipsa loquitor*.[4]

There is no dispute that Pennsylvania substantive law applies in this diversity case. In *Gilbert v. Korvette, Inc.*, 327 A.2d 94 (Pa. 1974), the Pennsylvania Supreme Court

---

[4] Defendants do not make any specific argument as to Plaintiff's strict liability and breach of warranty claims. (*See* Docs. 31, 39.)

adopted the Restatement (Second) of Torts § 328D, titled Res Ipsa Loquitur, as the law of the Commonwealth. Section 328D provides as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts s 328D (1965).

Defendant specifically argues that

> Plaintiff has no evidence other than his testimony that he bit into a blade and his claim that, therefore, it must be because Defendants breached a duty owed to him. But that testimony is not legally sufficient to meet not the [sic] *res ipsa* standard. It can be fairly agreed upon that a hot dog should not have a knife tip in it, such that a knife tip "is of a kind which ordinarily does not occur in the absence of negligence" *Estate of Zimmerman* [*v. SEPTA*, 168 F.3d 680 (3d Cir. 1999)]. Plaintiff, however, has failed to introduce evidence that the Defendants were the source of this alleged negligence. Plaintiff's claim of negligence further fails on the second element of the *res ipsa* standard. Plaintiff has not ruled out "other responsible causes, including the conduct of the Plaintiff or third persons." *Zimmerman, supra*. Plaintiff has also introduced no evidence to exclude other sources of negligence, such as metal fragments which did not come from the defendants' facilities. See, e.g., Section d, supra, in which the metal fragment is consistent with the metal typically used in household kitchen knives.
>
> . . . .

> . . . Plaintiff has not excluded all causes of his alleged injury other than the Defendants to this suit. And, based upon the affidavit of Defendant's plant representative Crystal Robinson and the expert metallurgical report provided by Alan Stone, the Defendants have excluded any connection between the metal fragment in question and either the Smithfield's manufacturing facility or Walmart's retail facility. Thus, Plaintiff has not created a sufficient genuine issue of material fact for trial under F.R.C.P. 56.
>
> Due to Plaintiff's inability to prove that the Defendants were the only possible responsible parties to this action, plaintiff's *res ipsa* theory is not appropriate, and summary judgment should be granted. . . . Given the evidence provided by the Defendants that there are no blades utilized in the manufacture of the hot dogs, and that the metal of the Plaintiff's blade tip is distinguishable in both composition and wear patterns to Walmart's box-cutter blades, the Defendants have advanced substantial and reliable evidence that refutes Plaintiff's speculation that the Defendants are somehow responsible for his alleged injury. As a jury would not be permitted to render a verdict based upon speculation, summary judgment is appropriate.

(Doc. 31 at 24-26.)

With this argument, Defendants ask the Court to find that different conclusions could not be reached as to whether a Defendant caused Plaintiff's harm or Plaintiff himself or a third person caused the harm. Given the facts of this case, such a conclusion would require the Court to determine that Plaintiff is not credible. This the Court cannot do when considering a motion for summary judgment. *Anderson*, 477 U.S. at 255.

While Defendants view their evidence as irrefutable, the Court takes a different view. The Court finds the Robinson and Volansky Affidavits and the Stone Opinion insufficient to support the conclusion that "Defendants have excluded any connection between the metal fragment in question and either the Smithfield's manufacturing facility or Walmart's retail

11

facility" (Doc. 31 at 25). First, the Court does not find that the Robinson and Volansky Affidavits eliminate the possibility that the type of metal fragment at issue could be present at the relevant facility. Second, the Affidavits and Stone opinion do not rule out a system failure or other event which could have allowed the presence of the metal fragment in the hot dog to occur and go undetected.

Importantly, Defendants conclusory assertion that Plaintiff has not excluded all causes of his alleged injury other than Defendants misrepresents what must be shown at the summary judgment stage, i.e., whether there is sufficient evidence that the inference "that harm suffered by the plaintiff is caused by negligence of the defendant . . . may reasonably be drawn by the jury." Restatement (Second) of Torts s 328D (1)-(2). In determining whether the inference may reasonably be drawn, the Court looks to whether there is sufficient evidence to find that this is a case where "different conclusions may reasonably be reached." Restatement (Second) of Torts § 328D(3).

> The plaintiff's burden of proof . . . requires him to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. Where the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof. The plaintiff need not, however, conclusively exclude all other possible explanations, and so prove his case beyond a reasonable doubt. Such proof is not required in civil actions, in contrast to criminal cases. It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so.

Restatement (Second) of Torts § 328D, cmt. d. The Illustrations of this comment include the following:

> A buys at a grocery store a can of spinach packed by B. While eating the spinach, A is injured by a large piece of glass concealed in it. There is evidence that nothing was done by A or by any third person after the can of spinach was opened which would account for the presence of the glass. Without other evidence, it may be inferred that the presence of the glass was due to the negligence of B.

Restatement (Second) of Torts § 328D, cmt. d Illustration #1.

In considering whether a plaintiff has satisfactorily eliminated his own conduct as the cause of harm, the Restatement provides the following guidance and illustration:

> The inference of negligence does not point to the defendant until the plaintiff's own conduct is eliminated as a responsible cause. Where the evidence fails to show a greater probability that the event was due to the defendant's negligence than that it was caused by the plaintiff's own conduct, the inference of the defendant's responsibility cannot be drawn. This is true not only as to the plaintiff's own contributory negligence, but also as to his innocent conduct, of a kind which would relieve the defendant of responsibility, as where a chattel manufactured by the defendant is put to a use for which it was not intended. Where, however, there is sufficient evidence that the plaintiff's own conduct was not a responsible cause, the fact that he was in "control" of a chattel or other instrumentality will not prevent the inference.
>
> Illustration:
> A is an engineer operating a locomotive of B Railroad. One of his duties is to keep the water in the boiler, and thus the steam pressure, at a proper level. The boiler explodes and kills A. Without other evidence, it cannot be inferred that the explosion was due to the negligence of B Railroad. But when the fireman testifies that A kept the water and steam at proper levels, and did nothing to cause the explosion, the inference can be drawn.

Restatement (Second) of Torts § 328D, cmt. i and Illustration #11.

The Restatement's illustrations are informative: the piece of glass which a plaintiff alleged to have found in a can of spinach in Illustration #1 is analogous to the knife piece found in the hot dog here; the testimony that the injured party did nothing to cause the incident leading to harm in Illustration #11 is analogous to Plaintiff's testimony that he did nothing which could have introduced the knife point into the hot dog--he prepared a hot dog from a sealed package and did not use a knife in the preparation and, upon biting into the hot dog he had prepared for himself, he was injured by a piece of metal that was the tip of a knife. (*See* Doc. 32 ¶¶ 5-11; Doc. 35 ¶¶ 5-11.) With their arguments in support of summary judgment, Defendants implicitly question the veracity of Plaintiff's version of events, but it is not for the Court to make credibility determinations, it is for the jury. Considered in the proper legal context, Plaintiff's deposition testimony is sufficient to preclude a determination at this stage of the proceedings that he will be unable, as a matter of law, to put forward evidence at trial that would allow the Court to submit the question of negligence under the doctrine to the jury.[5] *See* Restatement (Second) of Torts § 328D, cmt. d.

---

[5] Defendants quote *Njos v. United States*, Civ. A. No. 3:15-CV-931, 2017 WL 6949812 (M.D. Pa. Oct. 17, 2017), to undermine Plaintiff's reliance on his own testimony: "Plaintiff's testimony is the sole source of support for his allegations against the Defendants and . . . 'plaintiff cannot avoid summary judgment by simply relying upon a self-authored declaration that relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony.'" (Doc. 31 at 25 (quoting *Njos*, 2017 WL 6949812, at *4).) However, *Njos* does not provide the support suggested in that the matter under consideration was a claim of medical negligence where the need for expert testimony is the norm, and the availability of proceeding on a *res ipsa loquitor* theory is "carefully limited," *id.* at *7. Importantly, the District Court made the statement in the context of summary judgment in general and not in the in the context of its discussion of *res ipsa loquitor*. Similarly, while Defendants correctly quote the undersigned as having stated in *Rabadi v. Great Wolf Lodge of the Poconos, LLC*, Civ. A. No. 3:15-CV-101, 2016 WL 4238638 (M.D. Pa. Aug. 9, 2016), that "the mere occurrence of an accident does not establish negligent conduct," (Doc. 31 at 27 (quoting 2016 WL 4238638 at *4)), the *Rabadi* quote is not found in the Court's discussion

## 2. Evidence of Defectiveness

Defendants assert that Plaintiff has failed to rebut evidence presented by way of Affidavits from Crystal Robinson and Joseph Volansky, and the report of metallurgy engineer Alan Stone, and he, therefore, has failed to meet his burden of demonstrating a genuine issue of material fact that Defendants' product was defective at the time it left their care, custody, and control. (Doc. 31 at 16-22.) In response to Defendants' argument, Plaintiff avers that he need not proffer more than his own testimony to survive summary judgment. (Doc. 31 at 16-22; Doc. 36 at 9-13.) Plaintiff relies on the doctrine of *res ipsa loquitor* and the Illustrations provided in § 328D in support of his argument. (Doc. 36 at 10-13.) For the reasons discussed in the preceding section of this Memorandum Opinion, the Court concluded that Defendants have not shown as a matter of law that Plaintiff cannot rely on the doctrine. The Court found that Defendants' evidence does not show that the metal in question could not have come from the hot dog manufacturing facility, or the Walmart retail facility or that the metal fragment could not have become embedded in the hot dog and escaped detection by the systems in place at the manufacturing facility. *See supra* pp. 11-12. The Court also found that Plaintiff's testimony was sufficient to preclude summary judgment. Therefore, the Court finds that Defendants' argument that summary judgment is warranted because Plaintiff has not demonstrated a genuine issue of material fact that

---

of *res ipsa loquitor* or Restatement (Second) of Torts § 328D but in the discussion of general negligence principles. *See* 2016 WL 4238638, at *4, 9.

Defendants' product was defective at the time it left their care, custody, and control is without merit. Thus, Defendants' Motion for Summary Judgment Pursuant to Rule 56 (Doc. 30) is properly denied.

B. **Motion to Preclude Evidence**

As stated at the outset and discussed above, the Court determined that consideration of the exhibits identified in Plaintiff's Motion to Preclude Defendants' Exhibit Number #3 (Doc. 31-3) & Exhibit #4 (Doc. 31-4) did not support Defendants' assertion that the evidence showed they were entitled to summary judgment and, therefore, the Court stated that it will deny Plaintiff's motion. The Court adopted this approach in an attempt to expeditiously move this case forward.

In the brief in support of his motion, Plaintiff also requests that the Court preclude Robinson and Volansky from testifying at trial. (Doc. 34 at 7.) He does so pursuant to Federal Rule of Civil Procedure 37(c)(1) which provides that a party who fails to provide information or identify a witness as required by Federal Rule of Civil Procedure 26(a) or (e) is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. (Doc. 34 at 2.)

It is well recognized in the Third Circuit that "'the exclusion of critical evidence is an extreme' sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *Konstantopoulos v.*

*Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977)); *see also Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir.1977)).

Here Defendants' failure to disclose the identities of Robinson and Volansky prevented Plaintiff from deposing these individuals before the fact discovery deadline. (Doc. 34 at 3.) Plaintiff declined Defendants' suggestion that Plaintiff depose Robinson and Volansky before responding to the summary judgment motion (Doc. 34 at 6-7), rejecting any assertion that the identified deficiency could be cured by the late deposition of the individuals because Defendants placed the burden on Plaintiff to seek an extension of discovery after the close of discovery and within the limited time allowed for response to the summary judgment motion (*id.* at 7). In determining the appropriateness of the requested sanction, the Court is also cognizant of the facts that Plaintiff never served Defendants with a notice regarding the deposition of a corporate designee under Federal Rule of Civil Procedure 30(b)(6) and did not serve them with any interrogatories. (Doc. 38 at 3-4.) More importantly, given the Court's determination that Defendants are not entitled to summary judgment, Defendants' failure to disclose these witnesses is harmless in the context of the summary judgment motion. Therefore, at this stage of the proceedings, the Court concludes that the sanction of precluding Robinson and Volansky from testifying at trial would be extreme and unwarranted.

Notwithstanding this determination, the importance of a litigant's opportunity to discover relevant evidence is an ongoing process, and Federal Rule of Civil Procedure 26(e) specifically provides for supplementation or correction of a previous disclosure or response. In keeping with the philosophy that that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979), this Court will grant a motion made by Plaintiff to depose Robinson and Volansky.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Preclude Defendants' Exhibit Number #3 (Doc. 31-3) & Exhibit #4 (Doc. 31-4) to Defendants' Motion for Summary Judgment (Doc. 33) will be DENIED and Defendants' Motion for Summary Judgment Pursuant to Rule 56 (Doc. 30) will be DENIED. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge